IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



TIMOTHY C. YOAKUM,        §
                          §
        Plaintiff,        §
                          §
VS.                       §  NO. 4:18-CV-127-A
                          §
SABRE GLBL, INC.,         §
                          §
        Defendant.        §

## MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of defendant, Sabre GLBL Inc., for summary judgment. The court, having considered the motion, the response of plaintiff, Timothy C. Yoakum, the reply[1], the record, and applicable authorities, finds that the motion should be granted.

I.

## Plaintiff's Claims

On February 1, 2018, plaintiff filed his complaint in this action. Doc.[2] 1. He alleges that he was discriminated against by defendant on the basis of his race and sex.[3] He asserts causes of action for race and sex discrimination under 42 U.S.C. §§ 2000e

---

[1] The court need not consider the supplemental appendix in support of the reply.

[2] The "Doc. __" reference is to the number of the item on the docket in this action.

[3] Plaintiff confusingly refers to "sex/gender" making it difficult to determine what he is really alleging. See, e.g., Doc. 1, ¶ 61.

to 2000e-17 ("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), and Chapter 21 of the Texas Labor Code ("Chapter 21").

II.

Grounds of the Motion

Defendant maintains that plaintiff cannot prevail on any of his claims. Specifically:

A sex discrimination claim is not cognizable under § 1981. Plaintiff cannot pursue his claims under Chapter 21 since the Texas Workforce Commission did not ever receive his charge. Those claims are time-barred in any event. Any claims based on events that occurred more than 300 days before plaintiff filed his EEOC charge are time-barred. Even if not time-barred, plaintiff cannot prevail on his discrimination claims because he cannot establish a prima facie case of discrimination. And, he cannot establish constructive discharge. Even if plaintiff could make a prima facie case, he cannot overcome defendant's articulated legitimate, non-discriminatory reasons for its actions. And, respondeat superior is not a cause of action.

III.

Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986). In Mississippi Prot. & Advocacy Sys., Inc. v. Cotten, the Fifth Circuit explained:

> Where the record, including affidavits,
> interrogatories, admissions, and depositions could not,
> as a whole, lead a rational trier of fact to find for
> the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law.[4] Celotex Corp., 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597; see also Mississippi Prot. & Advocacy Sys., 929 F.2d at 1058.

IV.

Undisputed Facts

The summary judgment evidence establishes:

Plaintiff is a Caucasian male. Doc. 1, ¶ 1. Plaintiff worked for defendant from 1998 until December 2001, when he was laid off. Doc. 19 at APP 5. He was re-employed by defendant approximately three years later, in 2004. Id. In 2015 and 2016, plaintiff's title was "Principal Named Accounts." Id. He described his duties as selling the accounts and managing the accounts. Id. His duties included coordinating with various

---

[4] In Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit explained the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict.

4

functions within the company to ensure customer requests were handled appropriately and in a timely manner. Id. at APP 6. Plaintiff's compensation consisted of salary and bonus. Id. Plaintiff reported to Chris Wilding, a Caucasian male, until 2014, when Wilding was promoted to Senior Vice President of Sales Management. At that point, Chad Tibor, a Caucasian male, became plaintiff's supervisor. Tibor reported to Wilding. Id. at APP 7, APP 43.

Plaintiff's 2015 year-end performance review reflected that although plaintiff met or exceeded his goals for the year, he did not measure up with regard to defendant's values. Doc. 19 at APP 59-65. Plaintiff needed to make significant improvements in the areas of dependability, punctuality, and organization. Id. at APP 64. He was regularly late to calls and meetings and demonstrated a lack of urgency when required. Internal complaints had been lodged, as well as customer complaints. Id. Accordingly, plaintiff received a rating of "partially successful" as his overall performance rating. Id. at APP 65. Plaintiff was not awarded any discretionary stock options and his bonus was lower than it had been in the previous two years. Id. at APP 44.

Plaintiff spoke with a male Caucasian colleague who got a larger bonus than in prior years. Doc. 19 at APP 11. Defendant awarded discretionary stock options to Rowena Capili because she

had demonstrated outstanding performance and received a rating of "highly successful" on her 2015 year-end performance review. Id. at APP 44, APP 69-76. Capili was an account manager for the operational side of the business. Id. at APP 7. She had a different role than plaintiff. Id. at APP 6.

In August and September 2016, Tibor requested plaintiff to work in the office during normal business hours instead of working from home. Doc. 19 at APP 18, APP 43-44. Tibor believed that if plaintiff was in the office some of the costly delays in getting information could be avoided. Id. at APP 53. Plaintiff believed Tibor made a second set of rules just for him, since "nobody else [had] to come into the office five days a week 9:00 to 5:00." Doc. 24 at R. App. 12. Capili was allowed to work from Houston two weeks out of every month. Id. at R. App. 13.

In February 2017, Tibor put plaintiff on a performance improvement plan ("PIP"). Doc. 19 at APP 44, APP 78-79. The PIP identified specific areas that plaintiff needed to address, e.g. not being responsive to clients and failing to meet deadlines. Id. at APP 78. The PIP gave plaintiff thirty days to improve his performance. Id. at APP 79. The first working day after receiving the PIP, plaintiff submitted his written resignation. Id. at APP 44, APP 81.

V.

Analysis

The same analysis applies to claims under Title VII and § 1981.[5] Shackelford v. Deloitte & Touche, L.L.P., 190 F.3d 398, 403-04 n.2 (5th Cir. 1999). To establish a prima facie claim for discrimination plaintiff must show that: (1) he is a member of a protected group; (2) he was qualified for the position at issue; (3) he suffered an adverse employment action by his employer; and (4) he was replaced by someone outside the protected group or was treated less favorably than other similarly situated employees. McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007). An adverse employment action is an ultimate employment decision. Felton v. Polles, 315 F.3d 470, 486 (5th Cir. 2002). Ultimate employment decisions include hiring, firing, demoting, promoting, granting leave, and compensating. Thompson v. City of Waco, 764 F.3d 500, 503 (5th Cir. 2014). An employer's action does not rise to the level of adverse if it fails to have more than a tangential effect on a possible future ultimate employment decision. Mota v. Univ. of Tex. Houston Health Sci. Ctr., 261 F.3d 512, 519 (5th Cir. 2001). For example, placing an employee on a performance improvement plan is not an adverse employment

---

[5] The same analysis also applies to claims under Chapter 21. Shackelford v. Deloitte & Touche, L.L.P., 190 F.3d 398, 403-04 n.2 (5th Cir. 1999). As discussed, infra, plaintiff concedes that he cannot pursue his Chapter 21 claims.

7

action. Turner v. Novartis Pharms. Corp., 442 F. App'x 139, 141 (5th Cir. 2011).

Plaintiff argues that the facts of his case are distinguishable from those of Turner. But, he fails to point to evidence to establish a genuine fact issue as to any adverse employment action. Plaintiff's receipt of a smaller bonus than in prior years was not connected to his PIP; nor was his failure to receive stock options. Those events were tied to his 2015 performance review, which took place a year before the PIP. Further, plaintiff has nothing but his own speculation to support the contention that the PIP invariably would have resulted in his termination. Plaintiff resigned instead of making any effort whatsoever to improve his performance or even address what he considered to be unjust requirements. His allegations regarding receiving a review by telephone rather than in person, being informed about a reorganization that never occurred, and being required to work in the office instead of from home do not amount to ultimate employment actions. See, e.g., Allbritain v. Texas Dep't of Ins., No. A-12-CA-431-SS, 2014 WL 272223, at *4 (W.D. Tex. Jan. 23, 2014)(denial of participation in telecommuting is not an adverse employment action); Thomas v. Napolitano, No. 3:10-CV-265-B, 2013 WL 12250942, at *18 (N.D. Tex. Jan. 15,

2013)(failure to receive notification via normal methods is not an adverse employment action).

Plaintiff alleges that he was constructively discharged, which is an adverse employment action. Doc. 23 at 13-14. But, to establish a claim for constructive discharge, plaintiff must show that his working conditions were so intolerable that a reasonable employee would have felt compelled to resign. Green v. Brennan, 136 S. Ct. 1769, 1776 (2016); Faruki v. Parsons S.I.P., Inc., 123 F.3d 315, 319 (5th Cir. 1997). Discrimination alone is not enough; nor is mere failure to promote. Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001). Constructive discharge requires a greater degree of harassment than required to establish a hostile work environment (as discussed infra). Id. Here, there is simply no evidence to support the contention that a reasonable person in plaintiff's position would have been compelled to resign.

Even assuming plaintiff could point to any adverse employment action, he has not shown that he was treated differently from any similarly situated employee. The summary judgment evidence establishes that Capili had a better performance review. And, plaintiff himself testified that her job duties were not the same as his. He also testified that a male employee received a bigger bonus than in prior years. And he

testified that he was the only one required to work in the office five days a week. In sum, plaintiff has not made, and cannot make, a prima facie case of discrimination of any kind. Merely disputing his performance assessment by defendant is not enough. Arey v. Watkins, 385 F. App'x 401, 404 (5th Cir. 2010).

To prove his claim for hostile work environment, plaintiff must show: (1) plaintiff belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his protected status; (4) the harassment affected a term, condition, or privilege of employment; and, (5) defendant knew or should have known about the harassment and failed to take prompt remedial action. Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002). To be actionable, the harassment must be both objectively and subjectively offensive. Harvill v. Westward Communications, L.L.C., 433 F.3d 428, 434 (5th Cir. 2005). It must be sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive work environment. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). Factors considered include the frequency of the conduct, its severity, whether the conduct was physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interfered with the employee's work performance. Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998). The Supreme Court has

"made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." Id. at 788.

The summary judgment evidence establishes that this is not the type of case where it could be said that the alleged harassment was so severe or pervasive as to alter a condition of plaintiff's employment.[6] See, e.g., E.E.O.C. v. Boh Bros. Constr. Co., L.L.C., 731 F.3d 444 (5th Cir. 2013); E.E.O.C. v. WC&M Enters., Inc., 496 F.3d 393 (5th Cir. 2007). In fact, the court is satisfied that this claim is frivolous. Plaintiff does not point to any evidence that even establishes the nature of the hostility he claims existed. There is no evidence that race played any role. His claim of sexual discrimination appears to be based solely on his speculation that Capili was conspiring with Tibor to harm plaintiff. See, e.g., Doc. 24 at R. App. 6-7, 24 (assuming "[s]he was sabotaging my work" refers to Capili), 25-26, 27. And, there is no evidence of the existence of a hostile work environment of the type that would support a claim at all.

Plaintiff does not dispute that sex discrimination claims are not cognizable under § 1981. Doc. 23 at 6-7. See Bobo v. ITT,

---

[6] Plaintiff could recall only one instance when Tibor yelled at him. Doc. 24 at R. App. 16. He also referred to inflammatory emails, but provided no example. Id. He testified that he felt humiliated on one occasion (unspecified in time) when Wilding came over to where plaintiff was sitting and two other men were standing and said, "Hello, men," and then said, "Oh, and Tim." Id. at R. App. 30-31.

11

Continental Baking Co., 662 F.2d 340, 342-45 (5th Cir. 1981); Eure v. Sage Corp., 61 F. Supp. 3d 651, 660 (W.D. Tex. 2014).

Plaintiff also agrees that he cannot proceed with his claims under Chapter 21, since the EEOC failed to transmit his charge of discrimination to the Texas Workforce Commission. Doc. 23 at 7-8. See Urrutia v. Valero Energy Corp., 841 F.2d 123, 125 (5th Cir. 1988); Cooper v. Texas Wesleyan Univ., No. 05-09-00347-CV, 1999 WL 1179613, at *3-4 (Tex. App.--Dallas Dec. 15, 1999, pet. denied).

The court need not address other grounds of the motion, such as limitations, even though they have merit. There is simply no evidence of any genuine issue of material fact for trial.

VI.

Order

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted, that plaintiff take nothing on his claims against defendant, and that such claims be, and are hereby, dismissed.

SIGNED December 19, 2018.

_____
JOHN McBRYDE
United States District Judge